# CIRCUIT COURT OF THE CITY OF RICHMOND

Fund for Animals, Inc., et al.

v.

Virginia State
Board of Elections et al.

October 27, 2000

Case No. HN-1856-1

BY JUDGE MELVIN R. HUGHES, JR.

In this case, two animal welfare organizations and three individuals challenge the constitutionality of a proposed amendment to the Virginia Constitution set for a referendum in the November 7, 2000, election. They seek injunctive and declaratory relief in a Bill of Complaint describing the proposed measure as a "trivialization of the Constitution of Virginia." The governor and the State Board of Elections are named as respondents. The pertinent background facts are not in dispute.

In 1999, the Virginia General Assembly approved a proposed constitutional amendment concerning the right of Virginia citizens "to hunt, fish, and harvest game." In the 2000 session, the General Assembly approved the proposal again. Accordingly, the General Assembly directed that the matter be placed on the ballot for the voters in the election set for November 7, 2000. The proposed amendment reads:

Section 4: *Right of the People to Hunt, Fish, and Harvest Game.*
The people have a right to hunt, fish, and harvest game, subject to such regulations and restrictions as the General Assembly may prescribe by general law.

The General Assembly directed that the matter be put to the voters in the form of a question on the ballot as follows:

> Question: Shall the Constitution of Virginia be amended by adding a provision concerning the right of the people to hunt, fish, and harvest game?

Alleging that the Virginia Constitution requires strict compliance to effect an amendment, plaintiffs contend that the proposed amendment must be put to voters for approval in its actual text rather than as a ballot question, which, they assert in this case, is "misleading and confusing." Plaintiffs apprehend many adverse consequences if the amendment is approved. For example, local authorities would lose the ability to regulate the possession and use of firearms and the validity of protective orders in domestic relations cases restricting the use and possession of firearms would be called into question as well. In these and other contexts, the constitutionality of firearm possession and use will be at issue which will lead to any number of conflicts between state and federal restrictions on hunting. On October 23, 2000, a hearing on plaintiffs' request for a preliminary injunction was convened and evidence in the form of affidavits and testimony was taken. Respondents oppose the motion on jurisdictional, standing, factual, and other legal grounds.

At the hearing, counsel for the plaintiffs, who is also one of the named individual plaintiffs, stated that considering that the ballots for the election have been already printed, plaintiffs request that the State Board of Elections be enjoined from canvassing the votes on the amendment and from declaring the results of the votes pursuant to law until the constitutional validity of the amendment process at the ballot stage could be determined as well as the constitutionality of the provision itself. Against the guiding considerations for preliminary injunctive relief, the core question is whether the law requires that the text of the proposed amendment be put to voters instead of a ballot question.

Respondents have raised significant issues on the standing of the plaintiffs, particularly the organizations, to bring this action. The organizations, it is said, lack standing because they are both asserting rights of others representationally, which is not recognized under Virginia law.

The most salient and dispositive of all the questions raised bear on one of the factors to be considered for injunctive relief and whether the court sitting in equity should exercise jurisdiction to interfere with an election. The court will decline the request.

First, the factors that a court takes into account in awarding injunctive relief are well known. Four factors must be considered:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1992), *quoting Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991). Here, plaintiffs have failed to show that their claims are probably successful on their merits.

Article XII, Section 1, of the Constitution of Virginia governing amendments sets out the procedure for its amendment. After the prescribed votes by the General Assembly, Article XII, Section 1, sets out the process to be followed, pertinent here as follows:

> If at such regular session or any subsequent session of that General Assembly the proposed amendment or amendments shall be agreed to by a majority of all the members elected to each house, then it shall be the duty of the General Assembly to submit such proposed amendment or amendments to the voters qualified to vote in elections by the people, in such manner as it shall prescribe . . . .

I do not believe, as plaintiffs contend, that Article XII, Section 1, requires that the amendment be put the voters *in haec verba*. Plaintiffs' reliance on the language "such proposed amendment" for this is misplaced. When the entirety of this pertinent part is examined, "such proposed amendment" is modified by the latter clause "in such manner" such that the latter describes the manner and way the General Assembly chooses to put "such proposed amendment" to the voters for consideration. The latter clause, "in such manner," does not eviscerate the former, "such proposed amendment." If this were so, the latter would have no meaning and the framers would not have needed to include "in such manner" because an intention to require the verbatim text could have been expressed by stating the former alone.

This view is supported when other statutory requirements concerning constitutional amendments are examined. In Va. Code § 30-19.9, the General Assembly has directed the State Board of Elections to provide the electorate with information concerning proposed amendments to the Virginia Constitution. The statute requires the State Board of Elections to, *inter alia*,

print and deliver to local registrars copies of the explanation of the amendment for posting at polling places on election day. It also mandates the State Board of Elections to publish explanations in newspapers during the weeks preceding the election.

Secondly, for this court to exercise jurisdiction now with an election pending would be premature. In *Scott v. Jones*, 114 Va. 297, 76 S.E. 283 (1912), the question was whether it was constitutionally permissible for the General Assembly to approve a resubmission of two proposed constitutional amendments to the voters for approval. In *Scott*, the court declined to exercise jurisdiction finding that:

> If the amendment is not adopted, of course, no question will ever come before the court. If, upon completion of the proceedings, the validity of the amendment is assailed on the ground that several provisions of the Constitution have not been complied with, then the courts can pass upon the validity of the amendment.

*Id.* at 114 Va. at 304.

Plaintiffs' reliance on *Coleman v. Pros*, 219 Va. 143, 246 S.E.2d 613 (1978), is misplaced. There the court had jurisdiction granted by Va. Code § 8.01-653. There, the court was specifically vested with jurisdiction to grant mandamus relief when it is requested by either the Comptroller of the Commonwealth or the Attorney General when such official is doubtful "respecting the constitutionality of [an] . . . act" of the General Assembly appropriating or directing the payment of money out of the state treasury. *Coleman* was such a proceeding invoked under § 8.01-653, a situation which does not obtain here.

Accordingly, the court declines the invitation to issue a preliminary injunction as the case is not mature for consideration for the relief and because the plaintiffs have failed to satisfy "the plaintiff's equity" to award a preliminary injunction. See Va. Code § 8.01-628. For these reasons, this action is dismissed.

### Order

On October 23, 2000, came the parties, by counsel, on the plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. Upon consideration whereof, for the reasons stated by the court in a letter to counsel dated October 27, 2000, the Motion for Temporary Restraining Order and Preliminary Injunction is denied and the Bill of Complaint herein is dismissed.

Plaintiffs' exceptions are noted. And nothing further remaining to be done herein, it is ordered that this case be stricken from the docket and placed among the ended causes of this court.